NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 22-2968, 22-3041

_____

UNITED STATES OF AMERICA

v.

JOSE REYES OCHOA,
           Appellant in No. 22-2968

UNITED STATES OF AMERICA

v.

EDUARDO CASTELON-PRADO,
also known as EDUARDO CASTELANPARDO,
           Appellant in No. 22-3041

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-21-cr-00274-001, 2-21-cr-00274-002)
District Judge: Honorable Harvey Bartle, III

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 8, 2024

_____

Before: CHAGARES, Chief Judge, PORTER and SCIRICA, Circuit Judges

(Filed: April 18, 2024)

———————

OPINION[*]

———————

CHAGARES, Chief Judge.

A jury convicted Eduardo Castelon-Prado and Jose Reyes Ochoa of kidnapping and conspiracy to commit kidnapping. Both defendants appeal their judgments of conviction and sentence. For the following reasons, we will affirm.

I.

We write primarily for the parties and recite only the facts essential to our decision. Castelon-Prado, Ochoa, and a third co-conspirator named Rodrigo Rodriguez Gonzalez kidnapped 17-year-old J.S. at night in the parking lot of an Olive Garden restaurant in Philadelphia. The kidnapping was the culmination of a months-long effort by the defendants to surveil J.S., his father, and the Philadelphia home where they lived.

J.S. was working the evening shift at Olive Garden on June 14, 2021. Unbeknownst to him, the defendants had been watching him earlier that afternoon and followed him by car from his home to the parking lot of Olive Garden. While J.S. worked, the defendants had dinner at an Applebee's restaurant across the street and then waited in their car for J.S. to come out.

J.S. went to the parking lot at around 8:30 p.m. to put his tip money in his car. The masked defendants pulled J.S. out of his car and threw him inside their car.

———————

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Castelon-Prado and Gonzalez drove away with J.S. and Ochoa got into J.S.'s car and followed them. Ochoa abandoned J.S.'s car in an Acme parking lot five minutes away from the Olive Garden and then got back into the defendants' car. The defendants drove J.S. to New Jersey and transferred him into a white van that Castelon-Prado had rented just days before the kidnapping. Eventually, they took J.S. out of the van and into Castelon-Prado's apartment. They held J.S. hostage in this apartment until his eventual rescue.

From the moment J.S. was kidnapped, the defendants made numerous ransom calls to his parents, demanding $500,000 for their son's release. Based on the ransom calls, the authorities traced the defendants' location and set up surveillance outside Castelon-Prado's apartment.

Federal agents conducted a rescue operation of J.S. on the morning of June 16. The agents stormed Castelon-Prado's apartment, fatally shot Gonzalez (who was guarding J.S. with a firearm), and rescued J.S. Ochoa, an adult woman named Sonia Mabel Cabrera, and Castelon-Prado's 15-year-old son were also in the apartment. The agents found Castelon-Prado soon thereafter in a second apartment in the same complex. The evidence recovered in the apartments included the burner phones used to make the ransom calls and a GPS tracker. J.S.'s father would later inform the agents that he found an identical GPS tracker on the bottom of his car.

The District Court granted the government's motions to preclude the defendants' anticipated duress defense prior to trial. Numerous witnesses testified for the government at trial, including J.S. and his parents. The jury convicted Castelon-Prado and Ochoa

each of one count of kidnapping and one count of conspiracy to commit kidnapping in violation of 18 U.S.C. §§ 1201(a)(1), (c), and (g).  The District Court sentenced both Castelon-Prado and Ochoa to 480 months of imprisonment, a term of supervised release of five years, and a special assessment of $200.  The defendants timely appealed.

II.[1]

Castelon-Prado and Ochoa raise four issues on appeal.  We will consider them in turn.

A.

Castelon-Prado and Ochoa argue that the District Court erred in granting the government's pretrial motions to preclude their anticipated duress defense.[2]  To assert a defense of duress at trial, the defendant must show, by a preponderance of the evidence, that:  (1) he faced an immediate threat of death or serious bodily injury; (2) he held a well-grounded fear that the threat would be carried out; (3) there was no reasonable opportunity to escape the threatened harm; and (4) he did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct.  United States v. Miller, 59 F.3d 417, 422 (3d Cir. 1995).

Ochoa proffered that he participated in the kidnapping out of fear of the Mexican cartel that had killed his uncle in Mexico and had threatened him, too.  According to Ochoa, J.S.'s father was a drug dealer who owed a drug debt to the Mexican cartel.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.
[2] We exercise plenary review of the District Court's duress ruling.  United States v. Paolello, 951 F.2d 537, 539 (3d Cir. 1991).

Ochoa averred that he went along with the kidnapping because Gonzalez threatened him and his family if he did not collect the drug debt from J.S.'s father. Ochoa claimed that he did not learn about the planned kidnapping until the moment before it occurred.

Castelon-Prado likewise proffered that he was ignorant of the kidnapping until it occurred and participated in it because Gonzalez threatened him and his family. Castelon-Prado proffered that after the defendants had dinner at Applebee's and went back into their car, Gonzalez pulled out a firearm and held it to Castelon-Prado's waist area and forced him to participate in the kidnapping. According to Castelon-Prado, Gonzalez knew everything about his family and threatened harm to him and his family if he alerted anyone about the kidnapping.

We see no error in the District Court's pretrial duress rulings. Castelon-Prado could have escaped from Gonzalez — and in fact left his apartment several times during the time that J.S., Gonzalez, and Ochoa were there. See Miller, 59 F.3d at 422 (affirming a motion in limine ruling where "[t]here was ample opportunity for defendant to communicate her claims of duress to law enforcement officials"). Castelon-Prado argues that he had no reasonable opportunity to escape because Sonia Cabrera (a friend whom he treated as a daughter) and his 15-year-old son were within Gonzalez's reach at all times. But Castelon-Prado concedes his son was not initially in the apartment with Gonzalez. And Castelon-Prado also admitted during his proffer that "[i]t [wa]s unclear at what point" Sonia arrived at the apartment that Gonzalez occupied. Appendix 80. Thus, Castelon-Prado did not satisfy this element of his duress defense.

5

Ochoa's duress defense was similarly meritless. Even if Ochoa faced an immediate threat of harm, he had a reasonable opportunity to escape in the five minutes he was alone in J.S.'s car. Thus, he failed to satisfy this element of the duress defense.

B.

Castelon-Prado and Ochoa next argue that the District Court erred in applying the vulnerable-victim enhancement to their sentences.[3] This enhancement applies when: "(1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was a nexus between the victim's vulnerability and the crime's ultimate success." United States v. Zats, 298 F.3d 182, 186 (3d Cir. 2002) (citation omitted).

The District Court found that J.S. was a vulnerable victim because he was a 17-year-old teenager who was still traumatized by the kidnapping at the time of trial. The defendants surveilled J.S. and his father for a long period of time and kidnapped J.S. while alone at night in a parking lot, for the purpose of extracting money from his parents. Moreover, the defendants intimidated J.S. into compliance with their firearm. The District Court's finding was not clearly erroneous. See United States v. Rocha, 916 F.2d 219, 244–45 (5th Cir. 1990).

---

[3] We review the "highly fact-specific" application of sentencing enhancements for clear error. United States v. Perez-Colon, 62 F.4th 805, 812 (3d Cir. 2023). The preponderance of the evidence standard applies to "all facts relevant to the Guidelines." United States v. Laird, 67 F.4th 140, 143 (3d Cir. 2023).

6

C.

Castelon-Prado contends that the District Court erred in applying the use-of-a-minor enhancement to his sentence. This enhancement applies "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense[.]" U.S.S.G. § 3B1.4. The application of this enhancement turns on the "actions and intent of the defendant" and not the minor. United States v. Fountain, 792 F.3d 310, 321 (3d Cir. 2015) (quotation marks omitted). Castelon-Prado contends it was Cabrera who told his son to purchase the GPS tracker. But there is no doubt that Castelon-Prado forwarded a link of the GPS tracker to Cabrera for purchase, his son purchased the tracker and shipped it to Castelon-Prado's address, and Castelon-Prado used it in the commission of the kidnapping. It is reasonable to infer that Castelon-Prado intended for his son to be involved in the purchase of the tracker. Moreover, Castelon-Prado's son was also at the apartment with J.S. and the other co-conspirators, which further supports the inference that Castelon-Prado involved his son in his criminal activity. The District Court's finding as to this enhancement was not clearly erroneous.

D.

Finally, Ochoa argues that the District Court erred in refusing to reduce his sentence on the ground that he played a minor or minimal role in the kidnapping.[4] To determine whether a defendant played a minor role, we consider the "nature of the

---

[4] "[W]hen the defendant takes issue with the district court's denial of a reduction for being a minimal or minor participant which was based primarily on factual determinations, we review only for clear error." United States v. Carr, 25 F.3d 1194, 1207 (3d Cir. 1994).

defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991).

The evidence at trial showed that Ochoa traveled from California to New Jersey a month before the kidnapping. Ochoa surveilled the victim's house prior to the kidnapping and bought ransom phones, toiletries, and bedding in preparation for the kidnapping. Ochoa also helped research GPS devices to track J.S.'s father's car. Ochoa participated in the events of the day of the kidnapping, including driving J.S.'s car to a location away from the kidnapping site and holding J.S. hostage in Castelon-Prado's apartment. The District Court's finding that Ochoa did not play a minor role was not clearly erroneous.

## III.

For the foregoing reasons, we will affirm the District Court's judgments of conviction and sentence.